**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

ANDRE G. BOUCHARD
CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: December 31, 2014
Date Decided: January 2, 2015

Seth D. Rigrodsky, Esquire
Brian D. Long, Esquire
Gina M. Serra, Esquire
Rigrodsky & Long, P.A.
2 Righter Parkway, Suite 120
Wilmington, DE 19803

William M. Lafferty, Esquire
John P. DiTomo, Esquire
Lauren K. Neal, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North King Street
Wilmington, DE 19899

Peter B. Andrews, Esquire
Craig J. Springer, Esquire
Andrews & Springer LLC
3801 Kennett Pike
Building C, Suite 305
Wilmington, DE  19807

Gregory P. Williams, Esquire
A. Jacob Werrett, Esquire
J. Scott Pritchard, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

RE:    *In re Family Dollar Stores, Inc. Stockholder Litigation*
Consolidated C.A. No. 9985-CB

Dear Counsel:

On December 24, 2014, Plaintiffs filed an application for certification of an

interlocutory appeal from the memorandum opinion I issued on December 19, 2014,

denying Plaintiffs' motion to preliminarily enjoin the stockholder vote on the proposed

merger between Family Dollar Stores, Inc. ("Family") and Dollar Tree, Inc. ("Tree").[1]

---

[1] *In re Family Dollar Stores, Inc. S'holder Litig.*, 2014 WL 7246436 (Del. Ch. Dec. 19, 2014) (hereafter, the "Opinion").

As discussed in the Opinion, Dollar General, Inc. ("General") emerged as a competing bidder for Family after it had entered a merger agreement with Tree. This prompted Plaintiffs to seek to preliminarily enjoin the stockholder vote on the proposed merger, which originally was scheduled for December 23, 2014, "[1] until the Board has properly engaged with [General] and made a good faith effort to achieve a value-maximizing transaction, and [2] until corrective disclosures have been made."[2] On December 23, 2014, the stockholder meeting was adjourned until January 22, 2015. According to Family's public filings, the proposed merger cannot be consummated until February 2015.

For the reasons explained below, I deny Plaintiffs' application for failure to satisfy the requirements of Supreme Court Rule 42(b) for pursuing an interlocutory appeal.

## I.  LEGAL STANDARD

"Applications for certification of an interlocutory appeal require the exercise of the trial court's discretion and are granted only in extraordinary or exceptional cases."[3] Under Supreme Court Rule 42, "[n]o interlocutory appeal will be certified by the trial

---

[2] Opinion at *11 (quoting Pls.' Op. Br. 2).

[3] *In re Cogent, Inc. S'holder Litig.*, 2010 WL 4146179, at *1 (Del. Ch. Oct. 15, 2010) (citing *Ryan v. Gifford*, 2008 WL 43699, at *4 (Del. Ch. Jan. 2, 2008); *In re Pure Res., Inc. S'holders Litig.*, 2002 WL 31357847, at *1 (Del. Ch. Oct. 9, 2002)).

court or accepted by [the Supreme] Court unless the order of the trial court [1] determines a substantial issue, [2] establishes a legal right and [3] meets 1 or more of the . . . criteria" listed in Rule 42 subparts (b)(i)-(v).[4] Supreme Court Rule 42(b)(i) incorporates by reference "the criteria applicable to proceedings for certification of questions of law set forth in Rule 41."[5] Among the criteria in Supreme Court Rule 41 for certification of questions of law are that "[t]he question of law is of first instance in this State" or that "[t]he decisions of the trial courts are conflicting upon the question of law."[6]

## II. ANALYSIS

Plaintiffs assert three arguments for why the Opinion meets the criteria set forth in Rule 42(b)(i)-(v). For the reasons explained below, I conclude that each of these arguments is without merit. Thus, I deny Plaintiffs' application for failure to satisfy any of the criteria in Rule 42(b)(i)-(v) without deciding whether the Opinion determines a substantial issue and/or establishes a legal right.

First, Plaintiffs argue that the Opinion decides an original question of law, to wit, "whether a particularly restrictive interpretation of a fiduciary-out provision excuses a board from their *Revlon* duties, such that the board may reject a financially superior offer based on antitrust concerns, without fully informing themselves of those antitrust

---

[4] Supr. Ct. R. 42(b).

[5] Supr. Ct. R. 42(b)(i).

[6] Supr. Ct. R. 41(b)(i)-(ii).

concerns and without negotiating terms that might diminish or eliminate those concerns."[7] I disagree. The Opinion did not decide an original question of law in my view. Rather, as members of this Court have done for nearly 30 years since *Revlon*[8] was decided, the Opinion simply applied well-established legal principles emanating from *Revlon* to a particular set of facts.

In particular, I concluded in the Opinion "that the Board's decision not to engage in discussions with General in response to its Revised Offer was a reasonable exercise of judgment consistent with the directors' obligations under *Revlon* to maximize value for Family's stockholders."[9] I reached this conclusion "taking into account the framework of the fiduciary out provision in the Merger Agreement,"[10] and based on numerous other facts of record, including facts demonstrating that (1) the Board was motivated to maximize Family's value,[11] (2) the Board had been specifically advised that General's

---

[7] Appl. for Certification of Interlocutory Appeal 12-13.

[8] *Revlon, Inc. v. MacAndrews & Forbes Hldgs., Inc.*, 506 A.2d 173 (Del. 1986).

[9] Opinion at *13.

[10] *Id.* at *16. Notably, Plaintiffs do not contend that the fiduciary out provision in the merger agreement was not customary, do not advance an alternative reading of that provision from the one set forth in the Opinion, and do not identify any legal authority suggesting that I misinterpreted the provision.

[11] *Id.* at *12-13.

$80 offer had only an approximately 40% chance of obtaining antitrust approval,[12] (3) the Board, after receiving advice from its financial and legal advisors, reasonably determined that the level of divestitures General had proposed in connection with its $80 offer was so far below the level necessary to sufficiently address the antitrust risk of a Family/General combination that it was not prudent or appropriate to open negotiations with General,[13] and (4) the Board was adequately informed in assessing the antitrust risks associated with General's $80 offer even though General's pricing information was not available to it.[14]

Second, Plaintiffs argue that "[t]he Opinion . . . directly conflicts with the Court's opinion in *Koehler v. NetSpend Holdings Inc.*,[15] by holding that the directors need to only be *adequately* informed rather than *fully* informed when deciding to reject a financially superior offer from a third-party."[16] In my view, this argument is one of semantics as there is no genuine conflict between the Opinion and *NetSpend* in their respective analyses of a Delaware director's obligation to be informed when making a decision in the context of fulfilling one's obligations under *Revlon*.

---

[12] *Id*. at *16.

[13] *Id*. at *16-18.

[14] *Id*. at *18.

[15] 2013 WL 2181518 (Del. Ch. May 21, 2013).

[16] Appl. for Certification of Interlocutory Appeal 13.

In the Opinion, I quoted from the Supreme Court's decision in *Paramount Communications Inc. v. QVC Network Inc.,* to explain that the Family directors' obligations under *Revlon* placed "the burden [on them] to show that, when they made the decision(s) at issue, they 'were adequately informed and acted reasonably.'"[17]  Later in the Opinion, when discussing that General's pricing information was confidential and thus was not reasonably available to the Board when General surfaced as a competing bidder, I further explained, quoting from the Supreme Court's decision in *Aronson v. Lewis*, that "Family's directors were obligated to 'inform themselves, prior to making a business decision, of all material information *reasonably available to them*.'"[18]

In *NetSpend*, the Court explained that under the "middle-ground review" of *Revlon*, "the directors have the burden of proving that they were fully informed and acted reasonably."[19]  In doing so, the Court cited *QVC*, which elaborates on the directors' duty to be informed under *Revlon* in a manner similar to the Opinion, as follows:

> In particular, this Court has stressed the importance of the board being adequately informed in negotiating a sale of control: "The need for adequate information is central to the enlightened evaluation of a transaction that a board must make."  This requirement is consistent with the general principle that "directors have a duty to inform themselves, prior

---

[17] Opinion at *12 (quoting *Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 45 (Del. 1994)).

[18] Opinion at *18 (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)(emphasis added)).

[19] *NetSpend*, 2013 WL 2181518, at *11.

to making a business decision, of all material information reasonably available to them."[20]

Given *NetSpend*'s explicit reliance on *QVC*, and the lack of any indication in the opinion that the Court intended to draw a distinction between being "fully informed" and "adequately informed," I see no substantive difference between the legal standard articulated in the Opinion and in *NetSpend*. More to the point, nothing in *NetSpend,* supports the illogical notion implicit in Plaintiffs' certification argument here that a board's duty to be informed in the context of a sale of control would require that the board consider information (*e.g.*, General's pricing data) that is ***not*** reasonably available to it.

Finally, relying on Supreme Court Rule 42(b)(iii), Plaintiffs argue that interlocutory appellate review of the Opinion is appropriate because "it involves substantial issues and such review by the Supreme Court would serve the considerations of justice."[21] The criterion for interlocutory review in Rule 42(b)(iii) requires that:

> [1] An order of the trial court has reversed or set aside a prior decision of the court, a jury, or an administrative agency from which an appeal was taken to the trial court which had determined a substantial issue and established a legal right, ***and*** [2] a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice.[22]

---

[20] *QVC*, 637 A.2d at 44 (internal citations omitted).

[21] Appl. for Certification of Interlocutory Appeal 13.

[22] Supr. Ct. R. 42(b)(iii) (emphasis added).

Plaintiffs do not (and cannot) argue that the Opinion "reversed or set aside a prior decision of the court, a jury, or an administrative agency."[23] Accordingly, the first of the two required elements of Rule 42(b)(iii) is not met here.[24]

\* \* \* \* \*

Because Plaintiffs' application fails to satisfy any of the requirements for certification set forth in Rule 42(b)(i)-(v) for the reasons explained above, I deny Plaintiffs' application for certification of an interlocutory appeal.

IT IS SO ORDERED.

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gp

---

[23] *Id.*

[24] *Archstone P'rs, L.P. v. Lichtenstein*, 2009 WL 2031785, at \*5 (Del. Ch. July 10, 2009) (finding that Rule 42(b)(iii) was not met where "Plaintiffs . . . utterly and completely fail[ed] to establish that the June 19 Order 'reversed or set aside a prior decision of the court, a jury, or an administrative agency'") (citation omitted).